**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**ANDRE MAURICE CURRY,**

     **Petitioner,**

    **v.**                                   **Case Number: 2:25cv266**

**CHADWICK S. DOTSON,**

     **Respondent.**

## REPORT AND RECOMMENDATION

Before the Court is Petitioner Andre Maurice Curry's ("Petitioner") Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("the Instant Petition"), ECF No. 11, Respondent United States of America's ("Respondent") Motion to Dismiss, ECF No. 23, Petitioner's Motion for Leave to Expand the Record, ECF No. 28, Petitioner's Motion to Compel Judgment, ECF No. 29, and Petitioner's Motion to Appoint Counsel, ECF No. 30. The matter was referred to the undersigned United States Magistrate Judge ("undersigned") pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. The undersigned makes these recommendations without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J).

For the reasons stated in this Report, the undersigned **RECOMMENDS** the Respondent's Motion to Dismiss be **GRANTED** and the Instant Petition be **DENIED** and **DISMISSED WITH**

**PREJUDICE**. Further, the undersigned **RECOMMENDS** that the Motion to Compel Judgment be **DENIED**, and **ORDERS** that the Motion for Leave to Expand the Record be **GRANTED**, and the Motion to Appoint Counsel be **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is currently in the custody of the Virginia Department of Corrections ("VDOC") following criminal convictions in the Circuit Court of the City of Virginia Beach ("Circuit Court"). On July 26, 2023, Petitioner was convicted after pleading guilty in the Circuit Court to one count of possession of a firearm by a convicted felon within years of conviction, in violation of Virginia Code § 18.2-308.2, and one count of driving while under the influence, in violation of Virginia Code § 18.2-266. ECF No. 25, attach. 1 at 1, 5. The Circuit Court additionally found that Petitioner had violated the terms of suspension in connection with a previous criminal conviction and imposed six months of the previously suspended sentence. *Id.* at 5. A separate hit-and-run charge was nolle prosequi pursuant to the plea agreement. *Id.* at 3. The Circuit Court entered the final sentencing and revocation orders on August 4, 2023. *Id.* at 1, 7. Petitioner did not file a direct appeal of his convictions and did not pursue any state post-conviction relief. ECF No. 25 at 2.

During the underlying trial in Circuit Court, Petitioner was represented by two defense counsel in succession. Mark B. Stokes was appointed as defense counsel on July 8, 2021, and served in that role until withdrawing on January 27, 2023, prior to Petitioner pleading guilty. ECF No. 25, attach. 4 at 1. After his withdrawal, Robert G. Morecock was appointed as defense counsel and represented Petitioner thereafter, including during the period leading up to Petitioner's guilty plea. *Id.* at 2.

2

Having pursued no post-trial relief in state court, on May 6, 2025, Petitioner filed in this Court a "Motion for Extension of Time to File his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2254," in which he asked for a ninety-day-extension to file his motion to vacate, set aside, or correct his state court sentence. ECF No. 1 at 1. Petitioner alleges that he had only "just recently discovered a constitutional violation in the criminal process that produced his conviction/sentence," and that, due to his pro se status, he required more time to research in the law library. *Id.* at 2. Included in the same filing is Petitioner's "Motion to Compel Defense Counsel to Surrender the Case File in the Above Styled Action to the Defendant," in which Petitioner requests the Court to compel Petitioner's defense counsel to "surrender the case/work file they created in representing" him because he has been denied access to said information. *Id.* at 4. On May 22, 2025, the Court denied Petitioner's requested relief as premature and ordered him to file an amended petition. ECF No. 5.

On May 30, 2025, Petitioner filed a motion requesting the issuance of a show cause order regarding his motions to extend time and to compel the surrender of his case file. ECF No. 6. On June 23, 2025, Petitioner filed an "objection," and on June 30, 2025, Petitioner filed an "addendum to the objection," in which he states that he is not receiving access to the law library to research his claim, providing documentation of the same. ECF Nos. 9–10; *see also* ECF No. 27 at 12.

On July 8, 2025, Petitioner filed the Instant Petition alleging ineffective assistance of counsel in connection with his Circuit Court convictions. ECF No. 11 at 1–2, 6–11. Petitioner alleges that both defense counsel who represented him in succession in Circuit Court failed to adequately represent him. *Id.* at 6–7, 10–11. Specifically, Petitioner argues that his first counsel, Mark Stokes, failed to "conduct a meaningful investigation," "represent [Petitioner's] innocence

3

in trial," "subpoena material witness," "challenge in a Motion to Suppress the inculpatory statement made by the Petitioner the night of his arrest," and "provide the ENTIRE CASE/WORK file in the case to include communications of all interested parties in the procedural history." *Id.* at 6–7. As to Petitioner's second counsel, Robert Morecock, Petitioner argues that he failed to "conduct a meaningful investigation," "duly inform his client as to the actual effects of the plea agreement that the Petitioner entered into under duress," "represent the jury trial that the Petitioner DEMANDED," "avoid conflicts of interest in the plea negotiations," and "subpoena material witness." *Id.* at 10–11. Petitioner further alleges that Morecock induced a material witness to speak with the Commonwealth's attorney in order to coerce the witness "not to cooperate with the Petitioner." *Id.* at 11.

On the same day, Petitioner filed a "Motion for Extension of Time to File his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2254," in which he states he believed the deadline to file his Amended Petition was thirty business days, not calendar days, and that he did not receive the Court's Local Rules from the law library as he had requested. ECF No. 12 at 1–2.

On July 22, 2025, Petitioner filed a deficient declaration of Dvonte Dyson[1], a person he alleges is a material witness in support of his allegation that he has recently discovered facts supporting the claims for relief in his Petitioner. ECF No. 13.

On August 19, 2025, the Court issued a Show Cause Order dismissing as moot Petitioner's motion to proceed in forma pauperis, ECF No. 2; denying Petitioner's Motion for Issuance of Show Cause Order, ECF No. 6, as premature; granting Petitioner's Motion for Extension of Time,

---

[1] *See infra* n.3 for further discussion of this statement.

4

ECF No. 12, and considering the Amended Petition as timely filed; and ordering Petitioner to show cause why the Petition should not be dismissed for failure to exhaust available state court remedies. ECF No. 15.

On August 25, 2025, Petitioner filed a second motion requesting the issuance of a show cause order. ECF No. 17. Therein, Petitioner requests that this Court issue an order requiring Respondent to show cause as to why the Petition should be denied, and that the Court order the United States Attorney to file an answer. *Id.*

On September 19, 2025, Petitioner responded to the Court's Show Cause Order regarding failure to exhaust. ECF No. 19. Petitioner argued that the legal basis for his claim was not available until after his time for appeal, and that he is actually innocent. *Id.* at 1–4. Petitioner also claimed that neither of his defense counsel properly explained his rights to appeal. *Id.* at 3.

On October 23, 2025, Petitioner filed a motion requesting the appointment of counsel. ECF No. 20. Petitioner requested counsel because federal law is a complex subject matter and he is a layman of the law. *Id.* at 1–2.

On November 6, 2025, the Court denied Petitioner's second motion requesting a show cause order, ECF No. 17; denied Petitioner's Motion to Appoint Counsel, ECF No. 20; and ordered Respondent to respond to the Petition. ECF No. 21.

On December 8, 2025, Respondent filed a motion to dismiss the Instant Petition, a Rule 5 answer, and a memorandum in support of both. ECF Nos. 23–25. On January 5, 2026, Petitioner responded to Respondent's motion to dismiss. ECF No. 27. No reply was filed.

On January 20, 2026, Petitioner filed a Motion for Leave to Expand the Record and attached the affidavit of Cynthia Curry, a person he alleges is a key witness in support of his

5

allegation that he is actually innocent of his Circuit Court convictions. ECF No. 28; ECF No. 28, attach. 1. On March 2, 2026, Petitioner filed two motions: a Motion to Compel Judgment as to the Instant Petition, and a second Motion to Appoint Counsel. ECF Nos. 29–30.

Accordingly, this matter is ripe for review and recommended disposition.

## II.    <u>LEGAL STANDARD</u>

A motion to dismiss "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). In considering this motion, a court must assume that the facts alleged are true. *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). A complaint is subject to dismissal if it does not "contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (cleaned up)). Factual allegations cannot require speculation or merely be conceivable. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. To "nudge[] their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, petitioners "[must] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. To achieve factual plausibility, the petitioner must allege more than "naked assertions . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[] short of the line between possibility and plausibility of entitlement to relief." *Id.*

Additionally, before considering the merits of the Petition, the Court must determine whether Petitioner appropriately exhausted the claims asserted in the Petition and whether Petitioner has procedurally defaulted on his claims such that these claims are simultaneously

6

exhausted and defaulted for purposes of federal habeas review. *See Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998). A federal court may not review a procedurally defaulted claim "absent a showing of cause and prejudice, or a fundamental miscarriage of justice such as actual innocence." *Kankam v. Dotson*, No. 1:23-CV-01313, 2024 WL 4008648, at *9 (E.D. Va. Aug. 30, 2024) (citing *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Shinn v. Ramirez*, 596 U.S. 366, 371 (2022)).

## III.   DISCUSSION

### A. The Petition is Barred by the Statute of Limitations

#### *1. Statute of Limitations*

Respondent argues that the Instant Petition is untimely because it was filed well beyond the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") one-year statute of limitations, which began when his conviction became final on September 3, 2023, and expired one year later on September 3, 2024. ECF No. 25 at 2–3. Respondent further argues that Petitioner's claim of newly discovered facts is meritless because all relevant facts were available to him throughout the pendency of his trial, and that any delay in filing a federal habeas petition can be attributed to a lack of diligence rather than any qualifying exception. *Id.* at 3. Finally, Respondent argues that Petitioner has not argued for or demonstrated extraordinary circumstances or an external impediment that would entitle him to equitable tolling of the statute of limitations. *Id.* at 3–4.

Petitioner maintains that he filed the Instant Petition "outside of the one year statutory limitation" because he only "recently discovered, through due diligence," the facts supporting his

claim. ECF No. 11 at 18. He further notes, in support of this position, that he is proceeding pro se and is a layman of the law. *Id.*

Here, the Instant Petition is untimely under the AEDPA's statute of limitations. Under 28 U.S.C. § 2244(d)(1), the limitations period generally runs from the date on which the petitioner's conviction becomes final, unless one of the alternative triggering provisions applies. Here, the final judgment in Petitioner's state case was entered on August 4, 2023, and became final thirty days later, on September 3, 2023, when the time for filing a direct appeal expired. *See Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) ("[T]he one-year limitation period begins running when direct review of the state conviction is completed or when the time for seeking direct review has expired." (citing 28 U.S.C. § 2244(d)(1)(A))); Va. Sup. Ct. R. 5A:6 ("[N]o appeal will be allowed unless, within 30 days after entry of final judgement . . . counsel files . . . a notice of appeal . . . ."). Petitioner did not file a petition for writ of habeas corpus with the state court. Accordingly, Petitioner had one year from when his conviction became final to file his habeas petition in this Court. That one-year period expired on September 3, 2024, but Petitioner did not file his federal habeas petition until July 8, 2025—more than ten months after the deadline.

Thus, the Instant Petition is time-barred unless Petitioner can demonstrate that a different triggering provision applies or that equitable tolling is warranted. *See* 28 U.S.C. § 2244(d)(1)(B)–(D); *Hill*, 277 F.3d at 704 ("Moreover, the one-year limitation period is also subject to equitable tolling in 'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation against the party.'" (quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000))). The Court will next address whether a different triggering provision applies or whether equitable tolling is warranted.

8

## 2. Statutory Tolling

Petitioner relies on § 2244(d)(1)(D), which provides that the limitations period may begin on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D). Petitioner argues that the Petition is based on newly discovered facts that could not have been uncovered earlier through the exercise of due diligence. ECF No. 11 at 18–19.

According to Petitioner, the newly discovered facts stem from a deficient declaration[2] submitted by Dvonte Dyson, who states that he was the lawful owner of the firearm found in Petitioner's vehicle—the evidence underlying Petitioner's criminal convictions. ECF No. 13 at 1. In the deficient declaration, Dyson states that he was in possession of Petitioner's vehicle for work-related purposes and "inadvertently left" the firearm in Petitioner's vehicle, and that "Petitioner was unaware of the firearm" left in the vehicle. *Id.* at 1–2. He also claims that he informed Petitioner's first counsel, Mark Stokes, that he was willing to testify that Petitioner did not know about the firearm in his vehicle on the day of his arrest, but Stokes neither called him to testify at Petitioner's preliminary hearing nor subpoenaed him at any point in the case. *Id.* at 2. He also alleges that he spoke to Petitioner's second counsel, Robert Morecock, about testifying, and that

---

[2] This document, although labeled an "Affidavit," was not notarized by a notary public and hence does not meet the criteria for an affidavit. Loc. Civ. R. 7(K)(3) ("The pro se party must identify all facts stated by the moving party with which the pro se party disagrees and must set forth the pro se party's version of the facts by offering affidavits (written statements **signed before a notary public** and under oath) . . . ." (emphasis added)). Instead, it is purportedly submitted as an unsworn declaration pursuant to 28 U.S.C. § 1746. *See* ECF No. 13 at 3 ("I, Dvonte Dyson, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the above stated facts are true and correct."). However, this submission fails to meet the statutory criteria for an unsworn declaration because it neither includes the required language of "Executed on [date]"—as it is undated—nor is it signed. *See* 28 U.S.C. § 1746(2).

Furthermore, the handwriting of this document appears to be the same as that of the affidavit of Cynthia Curry and Petitioner's previous submissions. *Compare* ECF No. 13 at 1, *and* ECF No. 28, attach. 1 at 1, *with* ECF No. 28 at 1. This raises considerable doubt as to its authenticity in the first instance.

9

Morecock instead directed him to speak with the Commonwealth's Attorney, which Dyson characterizes as an attempt "to intimidate [him] from testifying in Petitioner's case." *Id.* at 2.

Petitioner's newly discovered evidence argument is unpersuasive here. The facts underlying Petitioner's claim of actual innocence—namely, the alleged involvement of a key witness, Dvonte Dyson, and the decision by defense counsel not to call this witness at trial—appear to have been available to Petitioner and his counsel at the time of trial. Petitioner's allegations focus on events that purportedly occurred during pretrial proceedings and trial preparation, including Dyson's alleged statements at the preliminary hearing and defense counsel's decisions not to call him as a witness at trial. *Id.* at 2. While Petitioner indicates that he may have only recently learned of these facts, he fails to show, with any evidence, that the information itself was not available to him or his defense counsel at the time of trial. In fact, the record indicates that this information was accessible at the time of trial: Petitioner asks to supplement the record with an affidavit from Cynthia Curry, a witness who claims that she attended Petitioner's preliminary hearing and observed Mark Stokes, Petitioner's first counsel, "take possession of documents" indicating that Dyson owned the firearm recovered from the vehicle, and further heard Dyson tell Stokes that he had inadvertently left the firearm there without Petitioner's knowledge. ECF No. 28, attach. 1 at 1–2.

These assertions, if true, reflect that the substance of Petitioner's claims was known or discoverable through reasonable diligence at the time of trial, and therefore cannot support his claim of newly discovered evidence. Accordingly, the Petition is not entitled to statutory tolling.

10

### 3. Equitable Tolling

Furthermore, Petitioner has not established a basis for equitable tolling. Equitable tolling is reserved for "rare instances" in which extraordinary circumstances beyond the petitioner's control have prevented timely filing, and that enforcing the limitation period against the petitioner would be "unconscionable" and result in "gross injustice." *Green v. Johnson*, 515 F.3d 290, 304 (4th Cir. 2008) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003)). Equitable tolling is generally only warranted where a petitioner has been prevented from asserting his claims by the defendant's "wrongful conduct," or where extraordinary circumstances beyond the petitioner's control "made it impossible to file the claims on time." *Harris*, 209 F.3d at 330 (quoting *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)).

Here, Petitioner makes no such showing. Although he asserts that he only "recently discovered" the factual basis for his claims and points to difficulties associated with his pro se status, limited law library access, and delayed receipt of his case file, the record reflects that the underlying facts supporting his ineffective assistance claims were available to him at the time of the underlying proceedings. Petitioner was present throughout his criminal trial process, was represented by two successive attorneys, and his claims focus on counsel's alleged failures during pretrial proceedings and trial preparation—matters that would have necessarily been known to him at that time. Indeed, the deficient declaration and affidavit that Petitioner later submitted to this Court merely reiterate information that, by his own account, was communicated to counsel prior to trial. *See* ECF No. 13 at 2 (stating that Dvonte Dyson told Petitioner's first attorney on April 16, 2021, that he "would testify to the petitioner not having any knowledge of the firearm," and that Dyson spoke with Petitioner's second attorney on July 23, 2023, "about the fact that [Dyson

11

is] the lawful owner" of the recovered firearm); ECF No. 28, attach. 1 at 1 (stating that, on April 16, 2021—the date of Petitioner's preliminary hearing in Circuit Court—Cynthia Curry witnessed Petitioner's first attorney "take possession of documents that indicate indeed Mr. Dvonte Dyson was the lawful owner" of the recovered firearm).

Nor do the other grounds that Petitioner asserts establish a basis for equitable tolling. Petitioner did not pursue any direct appeal of his convictions or post-conviction relief at the state level and waited over ten months after the expiration of the limitations period to file this Petition, undermining any claim of diligence.

Moreover, Petitioner's filings state that he is not receiving access to the law library to research his claim, and he provides three inmate request forms showing the same. ECF Nos. 9–10, 27; ECF No. 9, attach. 2; ECF No. 27 at 12. Petitioner asserts that he has been continuously denied access to legal research by jail officials and that had he been granted access, he would have worked to file this Petition within the statute of limitations:

> Had jail officials provided legal research to access information about procedure, constitutional law, etc. he would of course had been fighting to present the truth during the statute of limitations about the constitutional violations. However based on denial of his access to court he has been PREJUDICED from moving forward in legal cause. . . . The Petitioner knew nothing about the appellant process until April 2025 and has struggled to obtain knowledge because prison officials refuse to provide him meaningful access to courts. . . . This is of course is [sic] the exception to the One Year Time limit as mentioned in 28 U.S.C. § 2244(d)(1)(D).

ECF No. 27 at 7.

However, the inmate request forms that Petitioner provides concerns periods well after the AEDPA statute of limitations had expired. As previously discussed, Petitioner's conviction became final on September 3, 2023, and the one-year limitations period expired on September 3, 2024. Yet the inmate request forms signed by jail staff are dated June 16, 2025; June 23, 2025;

and December 15, 2025, approximately nine to fifteen months after the filing deadline had already passed. *See* ECF No. 9, attach. 2; ECF No. 10 at 2; ECF No. 27 at 12. Even if Petitioner was denied law library access to any extent during those later periods in 2025, such restrictions could not have prevented him from timely filing a federal habeas petition before September 3, 2024. *See Harris*, 209 F.3d at 330 (explaining that equitable tolling applies in only "rare instances" where, for example, extraordinary circumstances "made it impossible to file the claims on time" (quoting *Alvarez-Machain*, 107 F.3d at 700)).

Moreover, Petitioner's assertion that he "knew nothing about the appellant process until April 2025" does not excuse the untimeliness of his Petition, as unfamiliarity with the law, lack of legal knowledge, and pro se status are not extraordinary circumstances sufficient to justify equitable tolling. *See United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) ("[E]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling.").

Accordingly, Petitioner has failed to demonstrate either extraordinary circumstances or reasonable diligence sufficient to warrant equitable tolling of the limitations period.

### 4. Actual Innocence

Throughout his filings, Petitioner relies on an affidavit and a deficient declaration in support of his actual innocence claim: (1) the deficient declaration from Dvonte Dyson, which Petitioner claims "alone" establishes that "no trier of fact would find the Petitioner guilty," and (2) the affidavit from Cynthia Curry, which Petitioner argues "avails the Petitioner's Actual Innocence" (together, "the statements"). ECF No. 27 at 8; ECF No. 28 at 2. Petitioner argues that, based on these statements, this Court should consider his actual innocence as a basis for overcoming the statute of limitations:

13

> The Respondent has failed to explain the Petitioners ACTUAL and FACTUAL innocence in which will allow the Petitioner to pursue his habeas petition as if it had been filed on time. The Petitioner's delay is irrelevant to appraisal of his actual innocence claim. . . . A habeas petitioner who demonstrates a credible claim of actual innocence based on the aforementioned evidence (key material witness affidavit) is entitled to equitable tolling of habeas limitations. Said evidence will avail that no reasonable juror would convict the Petitioner.

ECF No. 27 at 3–4; *see, e.g.*, ECF No. 11 at 23; ECF No. 19 at 1, 3–5.

The Supreme Court has held that a showing of actual innocence can allow a petitioner to overcome the expiration of the statute of limitations. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations."). However, successful claims of actual innocence—whether asserted as independent grounds for relief or asserted to overcome procedural obstacles—are "rare." *Id.*; *see Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998) (explaining that claims of actual innocence "should not be granted casually").

"In order to use an actual innocence claim as a procedural gateway to assert an otherwise defaulted claim, 'the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Royal v. Taylor,* 188 F.3d 239, 243–44 (4th Cir. 1999) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "Meeting this standard 'requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'" *Wolfe v. Dotson*, 144 F.4th 218, 233 (4th Cir. 2025) (quoting *Schlup*, 513 U.S. at 324). Furthermore,

14

"[a]ctual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 615 (1998).

The type of evidence that meets the actual innocence standard includes exculpatory forensic proof, multiple consistent eyewitness accounts, or credible third-party confessions that the third party committed the offense. *See, e.g.*, *House v. Bell*, 547 U.S. 518, 554 (2006) (finding that the petitioner presented "substantial evidence" pointing to a different suspect—including DNA evidence and expert witness testimony—and that the evidence "called into question" the "central forensic proof connecting [the petitioner] to the crime"); *Schlup*, 513 U.S. at 331 (holding that "the sworn statements of several eyewitness" exonerating the petitioner, along with affidavits that "cast doubt on whether [the petitioner] could have participated" in the offense, constituted sufficiently reliable new evidence to support an actual innocence claim); *Carriger v. Stewart*, 132 F.3d 463, 478–79 (9th Cir. 1997) (finding that the petitioner made a sufficient actual innocence claim where a third party testified under oath that he committed the offense and separately boasted to other people that he set up the petitioner). In each instance, the new evidence is not only material but also supported by significant indicia of reliability and corroborated by different sources.

By contrast here, the statements from Dvonte Dyson and Cynthia Curry do not meaningfully undermine the evidence presented at trial. Unlike the substantial evidence that courts have consistently found meet the actual innocence standard, the statements provide no basis for the Court to conclude that it is more likely than not that no reasonable juror would have convicted Petitioner. Dyson's statement merely asserts that Dyson owned the recovered firearm and that Petitioner lacked knowledge of it, but Petitioner acknowledges that this information was known to

15

his counsel before the guilty plea and therefore does not constitute the type of new, reliable evidence contemplated by *Schlup*.

Likewise, Cynthia Curry's affidavit does not independently establish Petitioner's factual innocence; rather, it alleges that Petitioner's first attorney received at the preliminary hearing[3] and thereafter did not use in trial documents that allegedly proved Dyson's ownership of the firearm. *See* ECF No. 28, attach. 1. Moreover, much of the affidavit consists of inadmissible hearsay. *See* Fed. R. Evid. 801. Cynthia Curry's assertions regarding Dyson's alleged statements to counsel—that Dyson owned the firearm and that Petitioner lacked knowledge of it—are offered for the truth of the matters asserted and are unsupported by any sworn testimony from Dyson that complies with the Court's procedural requirements. The hearsay nature of Curry's account further undermines its reliability and weighs against treating the affidavit as the type of "new reliable evidence" required to support an actual innocence gateway claim under *Schlup*. *See Herrera v. Collins*, 506 U.S. 390, 417 ("Petitioner's affidavits are particularly suspect in this regard because, with the exception of [one] affidavit, they consist of hearsay."). Thus, the affidavit speaks more to Petitioner's allegations regarding his counsel's conduct than to any new exculpatory evidence proving that Petitioner did not commit the offenses to which he pleaded guilty.[4]

---

[3] Presumably, Petitioner attended his own preliminary hearing and therefore would have been privy to this information, especially since it appears to have been relayed to the attorney by his family member. (The Court notes that Cynthia Curry resides at the same exact address in Virginia Beach, ECF No. 28, attach. 1 at 2, as the one Petitioner provided to the Court to set up a PACER account, ECF No. 16). Regardless, nowhere does Petitioner contend that he was *not* aware of the information contained in Dyson's statement until April 2025. In fact, Petitioner clearly contends that the April 2025 event was him "discovering" potential legal remedies, not the substance of Dyson's claims. *See infra* n.5.

[4] Having failed to pursue state court relief concerning the conduct of counsel, Petitioner may not assert any such claim now. *See infra* Section III.C.1.i.

16

Accordingly, because Petitioner has neither satisfied an alternative statutory trigger, demonstrated entitlement to equitable tolling, nor demonstrated a tenable claim of actual innocence, the Petition is barred by the statute of limitations.

## B.  Petitioner's Claims are Simultaneously Exhausted and Procedurally Defaulted

Respondent argues that both of Petitioner's claims were never presented to the Supreme Court of Virginia and are therefore unexhausted. ECF No. 25 at 6. However, because those claims would now be barred by Virginia's statute of limitations, Respondent argues they should be treated as technically exhausted but procedurally defaulted. *Id.* Petitioner acknowledges that he did not exhaust his state remedies on either claim because he is proceeding pro se as a "layman at law" and that, "through due diligence," he has only just recently discovered facts supporting his claims. ECF No. 11 at 7, 11.

Section 2254 allows a prisoner held in state custody to challenge his detention on the ground that his custody violates the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner, however, must exhaust available state remedies or demonstrate the absence or ineffectiveness of such remedies before petitioning for federal habeas relief, § 2254(b)(1)(A)–(B)(ii), to give "state courts the first opportunity to consider alleged constitutional errors occurring in a state prisoner's trial and sentencing . . . ." *Breard*, 134 F.3d at 619. Importantly, "[t]he burden of proving that a claim is exhausted lies with the habeas petitioner." *Id.* (citing *Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)); *Mallory*, 27 F.3d at 994 ("Where questions concerning exhaustion arise, the petitioner bears the burden of demonstrating that state remedies have, in fact, been exhausted."). The exhaustion requirement is satisfied if the prisoner seeks review of his claim in the highest state court with jurisdiction to consider it through either

17

direct appeal or post-conviction proceedings, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999); *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 587 (E.D. Va. 2006), and the "essential legal theories and factual allegations advanced in federal court [are] the same as those advanced at least once to the highest state court," *Pruett v. Thompson*, 771 F. Supp. 1428, 1436 (E.D. Va. 1991), *aff'd*, 996 F.2d 1560 (4th Cir. 1993).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. The procedural default doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* at 619 (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991)); *see also Hedrick v. True*, 443 F.3d 342, 359 (4th Cir. 2006) ("A federal claim is deemed procedurally defaulted where 'a state court has declined to consider the claim's merits on the basis of an adequate and independent state procedural rule.' . . . A federal court cannot review a procedurally defaulted claim unless the prisoner can demonstrate cause and prejudice for the default or a fundamental miscarriage of justice.") (quoting *Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998)) (internal citations omitted) (citing *Coleman*, 501 U.S. at 750).

A petitioner seeking federal habeas relief also procedurally defaults his claims when he "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Breard*, 134 F.3d at 619 (quoting *Coleman*, 501 U.S. at 735 n.1). Under these circumstances, the claim is considered simultaneously exhausted and procedurally defaulted

18

so long as "it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000) (citing *Gray v. Netherland*, 518 U.S. 152, 161 (1996)). If "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence," a federal court may not review the simultaneously exhausted and procedurally defaulted claim unless the petitioner can demonstrate cause and prejudice or a fundamental miscarriage of justice due to actual innocence. *Id.* (quoting *Gray*, 518 U.S. at 162).

Here, because Petitioner failed to file a state habeas petition within the one-year limitations period, his claims are now time-barred under Virginia law and cannot be presented before the state courts. Additionally, Virginia's statute of limitations constitutes an adequate and independent state procedural rule that bars federal habeas review. *Sparrow v. Dir., Dep't of Corr.*, 439 F. Supp. 2d 584, 588 (E.D. Va. 2006). As a result, although Petitioner's claims were never presented to the Virginia Supreme Court, they must be treated as technically exhausted because no state remedy remains available and simultaneously procedurally defaulted for purposes of federal review.

## C. Exceptions to Procedural Default

A federal court may not review a simultaneously exhausted and procedurally defaulted claim unless the petitioner can demonstrate cause and prejudice for the default or that a fundamental miscarriage of justice would result from the lack of such review. *Savino v. Murray*, 82 F.3d 593, 602 (4th Cir. 1996). The Court will address each exception in turn and whether Petitioner has met the standards for each.

*1. Cause and Prejudice*

Across his filings, Petitioner makes several arguments in an effort to establish cause for the procedural default of the Petition. Petitioner attributes the default to his status as a layman at law, asserting that he lacked access to legal resources and a law library and did not understand how to pursue his claims in a timely manner. He argues that his understanding of the legal basis for his claims arose only after he reviewed materials on a jail-issued tablet:

> The Petitioner, is in fact a layman of law and in April of 2025 reviewed legal materials on a jail tablet to begin to understand how to fight for the truth. . . . Both attorneys failed to explain the law, fight for his innocence explain his rights to appeal and the list goes on. It was when the Petitioner in April 2025 picked up a tablet and discovered through due diligence on how to present the truth in his innocence. . . . The legal basis for the constitutional claim was not available until will after time had expired in which to represent a state appeal.

ECF No. 19 at 1, 3–4.[5] Petitioner also argues that institutional barriers, rather than his ignorance, prevented him from filing within the statute of limitations. He specifically alleges that jail officials prevented him from conducting legal research, and that his attorneys failed to inform him of his appellate rights:

> The Petitioner is in a city jail denied of lawful access to the law library. . . . This is not ignorance and misconceptions about the law but jail officials obstructing justice. . . . The Petitioner was denied and remains 'BARRED' from receiving legal research. . . . And of course Mark Stokes, Robert Morecock nor Kari A Kolar in the lawful practice of explaining any information concerning an appeal, nothing about the malicious acts of collusion. . . . Had jail officials provided legal research to access information about procedure, constitutional law, etc. he would of course had been fighting to present the truth during the statute of limitations about the constitutional violations. However based on denial of his access to court he has been PREJUDICED from moving forward in legal cause.

---

[5] By this argument, Petitioner appears to concede that his "newly discovered evidence" in April 2025 is actually his discovery of a potential legal remedy he could pursue through a petition for habeas corpus, not the information relayed in the Dyson and Cynthia Curry statements.

20

ECF No. 27 at 4, 6–7; *see also* ECF No. 11 at 23 ("Mark Stokes nor Roger Morecock explained any information about the rights to appeal.").

Respondent argues that Petitioner has failed to establish cause and prejudice sufficient to excuse his procedural default. ECF No. 25 at 8. Respondent argues Petitioner cannot satisfy the "cause" requirement because his ineffective assistance of counsel claims do not fall within the narrow exception permitting review of defaulted claims, as they lack any merit. *Id.* at 8–11. Applying the *Strickland v. Washington*, 466 U.S. 668 (1984) standard for ineffective assistance of counsel claims, Respondent argues that Petitioner has shown neither deficient performance from his attorneys nor prejudice as a result, particularly where Petitioner's first counsel withdrew before the guilty plea, his successor counsel's alleged advice to plead guilty was within the bounds of reasonable professional judgment, and Petitioner's own sworn plea admissions undermine his allegations. *Id.* at 9–10. Because Petitioner has failed to demonstrate either cause or prejudice, Respondent asserts that federal review is barred and the Petition should be dismissed as procedurally defaulted. *Id.* at 11.

The existence of cause is ordinarily shown through (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. *See Coleman*, 501 U.S. at 753–54 (1991); *Clozza v. Murray*, 913 F.2d 1092, 1104 (4th Cir. 1990). To show prejudice, a petitioner must show an alleged constitutional violation worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). A court need not consider the issue of prejudice in the absence of cause. *Kornahrens v. Evatt*, 66

F.3d 1350, 1359 (4th Cir. 1995) ("To consider whether [the petitioner] also suffered prejudice would constitute an alternative holding, which . . . should be avoided.").

### i. Ineffective Assistance of Counsel as Cause

Respondent argues that this Court cannot review Petitioner's defaulted claims because he does not satisfy the narrow exception established in *Martinez v. Ryan*, 566 U.S. 1 (2012), where meritorious ineffective assistance of counsel claims may be reviewed in limited circumstances. ECF No. 25 at 8. Respondent contends that Petitioner's allegations regarding his trial counsel's ineffective assistance are unsupported and conclusory, are contradicted by the record of his voluntary guilty plea, and fail to establish that either of his counsel's conduct rendered the Circuit Court proceedings unfair or affected the outcome. *Id.* at 9–10. Respondent therefore argues that, because Petitioner has not established substantial ineffective assistance claims, he cannot demonstrate cause sufficient to excuse the procedural default.

Under *Martinez v. Ryan*, a federal habeas petitioner may overcome the procedural default of a state habeas claim alleging ineffective assistance of trial counsel ("IATC") in the limited circumstance "where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. . . . [or] where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984)." 566 U.S. at 15. The *Martinez* exception also applies to defaulted IATC claims in a state, such as Virginia, where the petitioner is not allowed to raise an IATC claim on direct appeal. *Trevino v. Thaler*, 569 U.S. 413, 417 (2013) (permitting review of IATC claims where the "structure and design" of the state system "in actual operation . . . make it 'virtually impossible' for an ineffective assistance claim to be

22

presented on direct review"). Thus, under *Martinez* and *Trevino*, a petitioner "may establish cause where his post-conviction counsel was constitutionally ineffective in failing to raise and exhaust a claim of 'ineffective assistance of trial counsel' where the State 'effectively requires a defendant to bring that claim in state postconviction proceedings rather than on direct appeal.'" *Moore v. Stirling*, 952 F.3d 174, 182 (4th Cir. 2020) (quoting *Davila v. Davis*, 582 U.S. 521, 525 (2017)).

"To summarize, then, *Martinez* held that a federal habeas petitioner who seeks to raise an otherwise procedurally defaulted claim of ineffective-assistance-of-trial-counsel before the federal court may do so only if: (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the 'cause' for default 'consist[s] of there being no counsel or only ineffective counsel during the state collateral review proceeding'; (3) 'the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim'; and (4) state law 'requires that an ineffective-assistance-of-trial-counsel claim be raised in an initial-review collateral proceeding.'" *Fowler v. Joyney*, 753 F.3d 446, 461 (4th Cir. 2014) (quoting *Trevino*, 569 U.S. at 423).

Inherent in *Martinez* is the requirement that there have been an initial state post-conviction proceeding—such as a direct appeal or state habeas proceeding—in which the IATC claim was required to be raised. *See, e.g.*, *Davila*, 582 U.S. at 524–25 ("[The *Martinez*] exception treats ineffective assistance by a prisoner's *state postconviction counsel* as cause to overcome the default of a single claim—ineffective assistance of trial counsel—in a single context—where the State effectively requires a defendant to bring that claim in *state postconviction proceedings* rather than on direct appeal." (emphasis added)); *Mahdi v. Stirling*, 20 F.4th 846, 893 (4th Cir. 2021) ("To be clear, the Supreme Court created this narrow exception to be applicable only to allegations of

23

[ineffective assistance of counsel] by [post-conviction relief] counsel."); *Wilson v. Perry*, No. 1:14-cv-576, 2014 WL 4685405, at *1 (M.D.N.C. Sept. 19, 2014) ("*Martinez* and *Trevino* each addressed whether a procedural bar, rather than a time bar, should apply to an ineffective assistance of counsel claim *from a state habeas proceeding*." (emphasis added)).

Here, the *Martinez* exception does not apply because there has been no initial state post-conviction proceeding.[6] Petitioner did not file a state habeas proceeding raising his IATC claims nor did he pursue any other collateral review proceeding in the Virginia courts following the entry of his convictions and sentences. ECF No. 25 at 2. The narrow exception recognized in *Martinez* excuses procedural default only where ineffective assistance, or the absence, of counsel *during an initial review collateral proceeding* prevented a petitioner from properly presenting a substantial IATC claim in state court. See *Fowler*, 753 F.3d at 461. Because Petitioner never initiated a state habeas proceeding, there was no initial review collateral proceeding in which counsel could have failed to raise or exhaust his claims. Accordingly, the *Martinez* exception does not apply here.

Moreover, *Martinez* does not permit federal review whenever a petitioner has defaulted an IATC claim. Rather, it provides only a limited avenue for excusing procedural default attributable to errors occurring during state collateral review proceedings. *See Davila*, 582 U.S. at 524–25 (emphasizing that *Martinez* applies to only "a single claim"—ineffective assistance of trial counsel—in only "a single context"—where the petitioner brought that claim in state post-conviction proceedings). Because Petitioner entirely failed to pursue state post-conviction relief,

---

[6] Although Respondent analyzes whether Petitioner's IATC claims are "substantial" under Strickland—for purposes of *Martinez*—Respondent does not address the threshold issue of whether *Martinez* applies at all in this case. Because Petitioner never pursued any state habeas or post-conviction proceeding, the *Martinez* exception is unavailable regardless of the merits of Petitioner's claims.

the procedural default of his IATC claims cannot be attributed to ineffective assistance of post-conviction counsel within the meaning of *Martinez*.

Accordingly, the Court concludes that the *Martinez* exception is inapplicable and cannot excuse Petitioner's procedural default.

### ii. Factors External to the Defense as Cause

Petitioner cannot demonstrate that an external impediment caused his default. As an initial matter, Petitioner makes conclusory allegations that his pro se status and lack of legal knowledge caused the procedural default, which courts have held are insufficient to excuse procedural default. *See, e.g., Dougherty v. Gilmore*, No. 1:16-cv-1392, 2017 WL 6759617, at *2 (E.D. Va. Oct. 17, 2017) ("[The petitioner] does not explain in any detail whatever the manner in which his pro se status and his alleged inability to access the law library prevented him from raising meritorious habeas claims. . . .").

Petitioner's asserted limited access to legal resources and the law library are similarly insufficient to constitute cause. Although Petitioner provides two documents suggesting restricted access in June 2025—ECF No. 9, attach. 2; ECF No. 10—he offers no explanation for his failure to pursue any form of relief during the period between the entry of his final judgment in August 2023 and his asserted efforts to conduct legal research in April 2025. *See Turner v. Watson*, No. 3:11-cv-757, 2012 WL 3985627, at *6 (E.D. Va. Sept. 11, 2012) (holding that "wholly conclusory" allegations of limited law library access and no explanation about how this limitation prevented the petitioner from presenting his claims in a state habeas petition were insufficient to establish cause). Because Petitioner's pro se status, lack of legal knowledge, and limited access to the law

library do not appear to have impeded his compliance with the state procedural rule, they cannot excuse his procedural default.

Accordingly, Petitioner has failed to establish cause for the procedural default, and the Court need not address prejudice. *See Kornahrens*, 66 F.3d at 1359.

*2. Fundamental Miscarriage of Justice*

As a final basis for avoiding procedural default, Petitioner argues that he is actually innocent of his underlying convictions and that it would therefore be a fundamental miscarriage of justice for this Court to not review his claims on the merits:

> The Petitioner hereby avers that he is an ACTUALLY INNOCENT UNITED STATES AMERICAN CITIZEN deprived of liberty, justice and truth. . . . MARK STOKES represented this innocence before the Court and therefore the trial court, the prosecutor as well as MARK STOKES engaged in an [sic] collusion to commit a fundamental miscarriage of justice. This fact alone shows that because of such conduct the Honorable Court should allow the Petitioner's case to be heard on the merits. . . . All respected parties involved both the prosecution and defense knew it was UNDISPUTED the Petitioner was ACTUALLY INNOCENT because the Procedural History (court appearance) will reflect such. The Actual Innocence standard in the case alone defeats any argument. Due to the cause and effect and the prejudicial outcome this is a fundamental miscarriage of justice.

ECF No. 19 at 1–2, 4; *see* ECF No. 11 at 6, 10, 19, 22–23. Respondent did not address Petitioner's arguments regarding fundamental miscarriage of justice as a separate basis for federal habeas review of otherwise defaulted claims.

Petitioner relies on two statements in support of his fundamental miscarriage of justice argument: (1) the deficient declaration from Dvonte Dyson, which Petitioner claims "alone" establishes that "no trier of fact would find the Petitioner guilty," and (2) the affidavit from Cynthia Curry, which Petitioner asks this Court to include in the record on the ground that failing to expand

26

the record to consider it would result in a fundamental miscarriage of justice because it purportedly "avails the Petitioner's Actual Innocence." ECF No. 27 at 8; ECF No. 28 at 2.

The fundamental miscarriage of justice exception applies in "extraordinary case[s]," applying only when a petitioner can demonstrate that a constitutional violation has "probably resulted in the conviction of one who is actually innocent" of the underlying offense. *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see Schlup*, 513 U.S. at 321 ("To ensure that the fundamental miscarriage of justice exception would remain 'rare' and would only be applied in the 'extraordinary case,' while at the same time ensuring that the exception would extend relief to those who were truly deserving, [the United States Supreme] Court has explicitly tied the miscarriage of justice exception to the petitioner's innocence."). If proven, a claim of actual innocence serves as "a gateway through which a habeas petition must pass to have his otherwise barred constitutional claim considered on the merits." *Schlup*, 513 U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

To establish actual innocence, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. "Actual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 615. This requires the petitioner to provide "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

Here, Petitioner has not met the standard for proving a fundamental miscarriage of justice. The statements are not the type of "new reliable evidence" required to invoke the fundamental miscarriage of justice exception, nor do the statements demonstrate that it is more likely than not

27

that no reasonable juror would have convicted Petitioner. As previously discussed, the statements merely reiterate information that seems to have been known to Petitioner and his counsel during the underlying criminal proceedings, including assertions that another individual owned the recovered firearm. *See* ECF No. 13 at 2; ECF No. 28, attach. 1 at 1. Such evidence is therefore not "new" within the meaning of *Schlup*. In addition, given the hearsay nature of Cynthia Curry's affidavit and the fact that Dyson's statement is undated and unsigned, neither proffer is sufficiently reliable to persuade the Court that no reasonable juror would have convicted Petitioner in light of this evidence. Both statements also appear to share the same handwriting, which is consistent with the handwriting found in all of Petitioner's filings, further undermining their reliability.

Moreover, Petitioner pleaded guilty in Circuit Court, which "constitute[s] a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). At most, Petitioner's allegations challenge the strength of the Commonwealth's evidence or the adequacy of his counsel's representation, but they do not establish his factual innocence. *See Bousley*, 523 U.S. at 615 ("Actual innocence means factual innocence, not mere legal insufficiency."). Accordingly, Petitioner has failed to demonstrate that this is the "extraordinary case" in which the fundamental miscarriage of justice exception applies to permit review of his otherwise defaulted claims.

Petitioner has failed to establish either cause and prejudice or a fundamental miscarriage of justice sufficient to excuse the procedural default of his claims. Because Petitioner's claims are therefore simultaneously exhausted and procedurally defaulted, and no exception to procedural default applies, this Court is barred from reviewing the Petition on its merits.

28

## D. Motion to Compel Judgment

Petitioner next moves this Court to "render judgment in his 28 U.S.C. § 2254 proceeding" and rule on the Instant Petition. ECF No. 29 at 2. Because Petitioner is requesting that the Court issue a decision on his Petition—the very action undertaken in this Report and Recommendation—the Court **RECOMMENDS** that Petitioner's Motion to Compel Judgment be **DENIED**.

## IV.   RECOMMENDATIONS

For the reasons stated, the Court **RECOMMENDS** that Respondent's Motion to Dismiss, ECF No. 10, be **GRANTED**, and the Instant Petition, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**. Further, the undersigned also **RECOMMENDS** that the Motion to Compel Judgment, ECF No. 29, be **DENIED**.

## V.   ORDERS

### A. Motion for Leave to Expand the Record

On January 20, 2026, Petitioner filed a Motion for Leave to Expand the Record and attached the affidavit of Cynthia Curry, a person he alleges is a key witness in support of his allegation that he is actually innocent of his Circuit Court convictions. ECF No. 28; ECF No. 28, attach. 1. Because the affidavit is relevant to the Court's consideration of Petitioner's actual innocence argument, the Court **ORDERS** that Petitioner's Motion for Leave to Expand the Record, ECF No. 28, be **GRANTED**.

### B. Motion to Appoint Counsel

Lastly, Petitioner filed a motion requesting the appointment of counsel because federal law is a complex subject matter and he is a layman of the law. ECF No. 20 at 1–2. However, there is "no constitutional right to counsel in [] federal habeas proceedings," and the interests of justice do

29

not require appointment of counsel in this case. *See Rouse v. Lee*, 339 F.3d 238, 250 (4th Cir. 2003) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555–56 (1987). Accordingly, the Court **ORDERS** that Petitioner's Motion to Appoint Counsel, ECF No. 20, be **DENIED**.

## VI. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to

Petitioner.

/s/
Lawrence R. Leonard
United States Magistrate Judge

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
May 18, 2026